IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RUBEN GEOVANNY HERNANDEZ, TDCJ No. 2065208, | § § § | |
| Petitioner, | § § | |
| V. | § § | No. 3:20-cv-1270-G-BN |
| DIRECTOR, TDCJ-CID, | § § § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Petitioner Ruben Geovanny Hernandez, a Texas prisoner, was convicted of possession of cocaine in an amount exceeding 400 grams, in violation of Texas Health and Safety Code Section 481.112, and he was sentenced to 15 years of imprisonment. *See State v. Hernandez*, No. 30832 (354th Dist. Ct., Hunt Cnty., Tex.); Dkt. No. 15-1, Ex. B. Hernandez's conviction and sentence were affirmed as modified. *See Hernandez v. State*, No. 06-16-00074-CR, 2017 WL 1173898 (Tex. App. – Texarkana Mar. 29, 2017, pet. ref'd); Dkt. No. 15-1, Ex. A. The Texas Court of Criminal Appeals (the CCA) refused his petition for discretionary review. *See Hernandez v. State*, PD-0425-17 (Tex. Crim. App. Sept. 13, 2017). And the United States Supreme Court denied Hernandez's petition for writ of certiorari. *See Hernandez v. Texas*, 139 S. Ct. 1203 (2019).

Hernandez next sought state habeas relief. *See* Dkt. No. 15-1, Ex. D. And the CCA denied his petition without written order. *See Ex parte Hernandez*, WR-91,027-01 (Tex. Crim. App. Apr. 15, 2020); Dkt. No. 15-1 at 68.

Hernandez then filed this *pro se* 28 U.S.C. § 2254 application for a writ of habeas corpus. Senior United States District Judge A. Joe Fish referred the Section 2254 application to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. The State responded. *See* Dkt. No. 15. Hernandez replied. *See* Dkt. Nos. 21-24. And the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should deny federal habeas relief.

## Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted). This is because, "[u]nder AEDPA, state courts play the leading role in assessing challenges to state sentences based on federal law." *Shinn v. Kayer*, 141 S. Ct. 517, 526 (2020) (per curiam).

So, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The statute therefore "restricts the power of federal courts to grant writs of habeas corpus based on claims that were 'adjudicated on the merits' by a state court," *Shinn*, 141 S. Ct. at 520 (citation omitted). And, "[w]hen a state court has applied clearly established federal law to reasonably determined facts in the process of adjudicating a claim on the merits, a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Further, "[u]nder § 2254(d)," the reasonableness of the state court decision – not whether it is correct – "is '"the only question that matters."'" *Id.* at 526 (quoting *Richter*, 562 U.S. at 102); *accord Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."); *Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)); *Hughes v. Vannoy*, 7 F.4th 380, 387 (5th Cir. 2021) ("'A merely incorrect state court decision is not sufficient to constitute an unreasonable application of federal law ....' Instead, the state court decision must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" (footnotes omitted)).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by AEDPA" under "28 U.S.C. § 2254(d)"). And nothing "in AEDPA or [the Supreme] Court's precedents permit[s] reduced deference to merits decisions of lower state courts." *Shinn*, 141 S. Ct. at 524 n.2 (citing 28 U.S.C. § 2254).

Starting with Section 2254(d)(1), a state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted). "But the Supreme Court has only

clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

As noted above, "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was

unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable.

*Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on an unreasonable factual determination.... In other words, even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 978 F.3d at

942.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)); *see also Hughes*, 7 F.4th at 387 (observing that a federal habeas court also "must 'carefully consider all the reasons and evidence supporting the state court's decision'" and that a decision that "does not explain its reasoning does not affect [federal habeas] review," as federal courts "are required to 'determine what arguments or theories could have supported the state court's determination' and examine '*each* ground supporting the state court decision'" (footnotes omitted)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). And, while "AEDPA sets a high bar," it is "not an insurmountable one." *Hughes*, 7 F.4th at 392. To surmount it, a petitioner must show that "there was no reasonable basis for the state court to deny

relief." *Richter*, 562 U.S. at 98. That is, in sum, a petitioner must "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217; *see also Hughes*, 7 F.4th at 392 (Federal courts "are obligated to correct" those "rare 'extreme malfunctions in the state criminal justice system.'" (quoting *Dunn v. Reeves*, 141 S. Ct. 2405, 2411 (2021) (per curiam))).

## Analysis

Against this framework, Hernandez argues that the CCA unreasonably adjudicated his claims that his counsel at trial and on appeal violated his Sixth Amendment right to effective assistance. *See* Dkt. No. 3 at 7-12.

The Court reviews the merits of properly exhausted claims of ineffective assistance of counsel (IAC), whether made against trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775

(2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the

range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

Specific to appellate counsel, the Supreme Court "has indicated that although 'it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, ... it is difficult to demonstrate that counsel was incompetent.'" *Diaz v. Quarterman*, 228 F. App'x 417, 427 (5th Cir. 2007) (per curiam) (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). And, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith*, 528 U.S. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986); internal quotation marks omitted); *see also Varga v. Quarterman*, 321 F. App'x 390, 396 (5th Cir. 2009) (per curiam) ("In *Gray*, the Seventh Circuit further held that if appellate counsel 'failed to raise a significant and obvious issue, the failure could be viewed as deficient performance' and that if the issue that was not raised 'may have resulted in a reversal of the conviction, or an order for a new trial, the failure was prejudicial.'" (quoting *Gray*, 800 F.2d at 646)).

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance

through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."); *see also Canfield v. Lumpkin*, 998 F.3d 242, 246 (5th Cir. 2021) ("*Strickland* … imposes a high bar on those alleging ineffective assistance of counsel. But 28 U.S.C. § 2254(d) … raises the bar even higher."); *cf. Shinn*, 141 S. Ct. at 525 ("recogniz[ing] the special importance of the AEDPA framework in cases involving *Strickland* claims," since "[i]neffective-assistance claims can function 'as a way to escape rules of waiver and forfeiture,' and they can drag federal courts into resolving questions of state law" (quoting *Richter*, 562 U.S. at 105)).

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation omitted).

In sum, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See Richter*, 562 U.S. at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101; *see Canfield*, 998 F.3d at 246-47 (Federal courts "review state-court adjudications for errors 'so obviously wrong' as to lie 'beyond any possibility for fairminded disagreement,'" presuming the state court "findings of fact to be correct." (footnotes omitted)).[1]

Hernandez first claims that his trial counsel should have objected to the prosecution's "enlarging the offense in the indictment through the jury charge," explaining that "[t]he only charge that [he pled] not guilty to was delivery of a

---

[1] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court ha already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

controlled substance, namely cocaine. It was through the jury charge that the [prosecution] enlarged the office … by adding manufacture." Dkt. No. 3 at 7-8.

The record disproves Hernandez's claim that the charge "enlarged" the offense on which he was indicted. The charge specified in the indictment was "manufacture/delivery of a controlled substance, [penalty group] 1 in an amount of four hundred grams or more." Dkt. No. 15-1 at 15 (all caps omitted); *see also* TEX. HEALTH & SAFETY CODE § 481.112(a), (f) ("Except as authorized by this chapter, a person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1," and such an offense "is punishable by imprisonment in the Texas Department of Criminal Justice for life or for a term of not more than 99 years or less than 15 years, and a fine not to exceed $250,000, if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, 400 grams or more.").

And the jury charge was consistent with the indictment and Section 481.112, stating that Hernandez "stands charged by indictment with the offense of Manufacture and/or Delivery [of] a Controlled Substance, namely: Cocaine, in an amount of more than four hundred grams, including any adulterants or dilutants." *Id.* at 16.

So, as he frames it, the objection that Hernandez believes his counsel was ineffective for not making is itself meritless. *See Soliz v. Davis*, 750 F. App'x 282, 293 (5th Cir. 2018) (per curiam) (A petitioner "cannot make a substantial showing under

*Strickland* [where his] 'counsel cannot have rendered ineffective assistance of counsel by failing to make an objection that would have been meritless.'" (quoting *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007))). Further, the evidence at trial was that Hernandez possessed a large amount of cocaine, not that he manufactured that cocaine, *see Hernandez*, 2017 WL 1173898, at *1-*2, and he has not otherwise shown that he was convicted of manufacturing. Hernandez has therefore established neither deficient performance (or prejudice) under *Strickland* nor that the CCA's denial of this claim was unreasonable.

Hernandez relatedly alleges that his counsel should have objected to the jury charge at punishment because, he alleges, that charge erroneously set forth the punishment range as 15 years to life imprisonment, when it should have been ten years to life. *See* Dkt. No. 3 at 10-11; *see also* Dkt. No. 15-1 at 17-20. Hernandez was indicted and convicted under Section 481.112(a), (f), which, as stated above, provides for a punishment range of 15 years to life imprisonment, as correctly stated in the applicable charge. *See* Dkt. No. 15-1 at 17.

And the basis for this claim appears to be a scrivener error in the state court's written judgment specifying the statute of offense as "481.115(f) HSC." *Id.* at 21. A person commits an offense under Section 481.115 by "knowingly or intentionally possess[ing] a controlled substance listed in Penalty Group 1 or 1-B, unless the person obtained the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice." TEX. HEALTH & SAFETY CODE § 481.115(a). And punishment for possession of 400 grams or more of such a

- 16 -

controlled substance does indeed begin at 10 years of imprisonment. *See id.* § 481.115(d).

Regardless, considering that the record establishes that Hernandez was convicted under Section 481.112, this objection would have also been meritless. Thus, Hernandez fails to show that the CCA's denial of this claim was unreasonable.

Hernandez also contends that his trial counsel was ineffective for not requesting a directed verdict based on an alleged lack of evidence to corroborate the accomplice witness's testimony. *See* Dkt. No. 3 at 7, 9.

Texas's accomplice-witness statute, Texas Code of Criminal Procedure Article 38.14, "disallows any conviction based upon uncorroborated testimony of an accomplice." *Zamora v. State*, 411 S.W.3d 504, 513 (Tex. Crim. App. 2013) (citation omitted). But "[t]he accomplice witness rule is satisfied if there is *some* non-accomplice evidence which *tends* to connect the accused to the commission of the offense alleged in the indictment." *Hernandez v. State*, 939 S.W.3d 173, 176 (Tex. Crim. App. 1997) (citations omitted).

Here, there was such evidence – a police officer's testimony concerning his interaction with Hernandez during a traffic stop, his dog's positive alert, his discovering a modified console in the car that Hernandez was driving, and the "subsequent search of the vehicle [that] revealed the large quantity of cocaine." *Hernandez*, 2017 WL 1173898, at *2. So Hernandez has not shown that it would have been meritorious for his counsel to have moved for a directed verdict as he proposes. *Cf. Soliz*, 750 F. App'x at 293. Thus, he has not shown that the CCA's denial of this

claim was unreasonable.

Finally, as to his lawyer on appeal, Hernandez alleges constitutional ineffectiveness for counsel's not "rais[ing] a claim that would have challenged the sufficiency of the evidence used to corroborate the accomplice witness testimony." Dkt. No. 3 at 10, 12. As just explained, Hernandez's theory related to the application of Texas's accomplice-witness rule to the evidence at his trial lacks merit. So he has not shown that this ground for appeal was "clearly stronger than those presented," *Smith*, 528 U.S. at 288, and has therefore failed to show (1) how his appellate counsel was ineffective under *Strickland* and (2) that the CCA unreasonably adjudicated this claim.

## Recommendation

The Court should deny the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 15, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE